HARRY F. COOPER, Plaintiff in Error, *vs.* PAUL H. COOPER, Defendant in Error.

*Opinion filed October 26, 1912—Rehearing denied Dec. 5, 1912.*

1. TRUSTS—*when the grantee holds title in trust for grantor.* Where a deed is intended as a mortgage and all the debts which it was intended to secure are paid, the grantee then holds the title to the land in trust for the grantor.

2. SAME—*when trustee need only account for price received at sale, with interest.* Where a trustee is authorized to sell the land, and he sells it in good faith for all it was then worth but for some reason conceals the fact of its sale from the *cestui que trust* for five years, he is liable to account for the price received, with interest, but not for the price the land was worth at the time the sale was disclosed to the *cestui que trust.*

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding.

BUTTERS & ARMSTRONG, for plaintiff in error.

JOHN M. RAYMOND, and JOHN K. NEWHALL, (SAMUEL ALSCHULER, of counsel,) for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Harry F. Cooper filed a bill in equity against his brother, Paul H. Cooper, seeking to have a deed declared to be a mortgage, and a decree for re-conveyance. The bill prays that in case the premises cannot be re-conveyed by reason of the rights of third persons having intervened, the defendant be required to account to complainant for the value of the land at the time the bill was filed, together with the rents and profits. The circuit court of Kane county found the issues for the complainant, and found that the defendant had conveyed the premises to third parties who purchased without notice, and entered a decree,

based upon the report of the master in chancery and evidence heard in open court, for $2343.87 against the defendant. The complainant below not being satisfied with the amount found due him, appealed to the Appellate Court for the Second District. The Appellate Court agreed with the circuit court in respect to the principal controversy between the parties but disagreed with that court in regard to the time from which the accounting should date, and for that reason reversed the decree below and remanded the cause, with directions to re-state the account covering all matters from December 12, 1893, excluding certain items claimed by defendant below, and to render a decree in favor of complainant below for the amount found to be due upon such re-statement of the account.

In the Appellate Court two questions were raised: First, whether defendant in error should be charged with the price he obtained for 160 acres of land sold in 1899 at $10 per acre, or for $40 per acre, which is shown to be the value of the land at the time the bill was filed; and second, whether, in stating the account between the parties, the court should go back of an alleged settlement which was had between the parties December 12, 1893.

The trial court, in stating the account, disregarded the alleged settlement of 1893 and included in the account transactions before as well as those occurring after the alleged settlement. In regard to the amount that should be charged to defendant in error on account of the sale of the 160 acres of land, both the trial and Appellate Courts agree that defendant in error should only be charged with the amount that he received for the land and interest thereon to the time of stating the account. The question whether the accounting should date from the settlement or from the commencement of the dealings of the parties was raised in the Appellate Court by the cross-errors assigned by defendant in error, which have been abandoned in this court. The sole question, therefore, that is open for our consid-

eration is whether the defendant in error should be charged with $10 per acre, for which he sold plaintiff in error's 160 acres of land in 1899, or with $40 per acre for said 160 acres, which was the stipulated value at the time the bill was filed in this case, in 1904.

The evidence shows the following facts: Harry F. Cooper, plaintiff in error, and Paul H. Cooper, defendant in error, are brothers. At the time the dealings between them commenced out of which this litigation grows, they had another brother, William D. Cooper, who died in 1894. In 1889 Harry and William Cooper owned, as tenants in common, a half section of land in South Dakota and Harry owned 160 acres in his own name in the same locality. The plaintiff in error at that time owed his brother Paul $2000 and William was indebted to Paul $1000. It also appears that Paul was security for plaintiff in error for $2000, evidenced by note held by the Aurora National Bank. Plaintiff in error and William were partners in a grocery store, in which they had a stock of groceries valued at $2000. The partnership also had some assets in the way of bills receivable, the amount of which is not stated and is immaterial. By deeds duly executed by William and plaintiff in error, both tracts of the Dakota lands were conveyed to defendant in error, and at about the same time the grocery store and certain bills receivable were transferred by a bill of sale to defendant in error. While all of these conveyances were absolute on their face, it is conceded by defendant in error now that they were, in fact, intended as mortgages, only, with power in defendant in error to sell and dispose of the mortgaged property for the purpose of raising funds to pay the indebtedness due defendant in error, the note of $2000 upon which he was security for plaintiff in error, and other liabilities of plaintiff in error and his brother William. The grocery store was closed out and the proceeds accounted for. The $2000 note due the bank was paid and those transactions are all eliminated

from the case. In February, 1893, defendant in error sold
the 320-acre tract of Dakota land for $3200 and accounted
for the proceeds in the settlement of December 12, 1893.
The settlement of December, 1893, covered all transactions
prior to that time and included the grocery store transac-
tion and the sale of the quarter section of land. The result
of that settlement, now conceded by both parties to be final,
was, defendant in error was found to be indebted to plain-
tiff in error $601.05, $100 of which was paid on the· day
of the settlement and the balance was paid at a later date.
After the payment of the balance found due plaintiff in
error by settlement, all matters were settled between them
and the plaintiff in error was the equitable owner of the
160 acres of land, the legal title to which still remained
in defendant in error. Under the evidence plaintiff in er-
ror was entitled in 1893 in equity to demand a conveyance
of the 160 acres of land, but the evidence fails to show
that he at any time requested that such conveyance be
made. He seems to have paid no attention whatever to the
160 acres of land,—not even to the extent of collecting
the rents or paying the taxes. These matters were attended
to by defendant in error. After defendant in error had
been paid all the debts which the deeds were intended to
secure, he then held the title to the land in trust for plain-
tiff in error. (3 Pomeroy's Eq. sec. 1218.)

On January 29, 1896, defendant in error wrote plaintiff
in error as follows: "Your letter of yesterday to hand.
I write this from the house, as I have an attack of grip.
I will keep that land in my name as it is until I can sell
it. When sold I will divide it equally between Darline and
Mary. It is safer in my hands. I will not be mortgaging
it, and if sold now would hate to sacrifice on it. I will
sell it first good opportunity. The other land I sold on
time and will be two years yet before it is paid." Plaintiff
in error made no reply to the above letter, made no sug-
gestions and gave no directions as to what defendant in

error should do with the 160 acres of land. In another letter, written February 4, 1896, defendant in error said: "I have concluded to deed that one-quarter section in Dakota, and you can decide among yourselves how you want it deeded. I thought it best to deed it to Mary and Darline. You have not yet got squared up with your creditors, have you? If not, they are liable to seize the land and you will not realize anything from it. I have a claim of $113.18 which must be paid before I deed it. Of course, my claim would be very much larger if I was presenting same to Nellie to pay. On payment of the above sum I am ready to make out deed." The Mary referred to in the above letter is the sister of the Cooper brothers and Darline is a daughter of the plaintiff in error. The Nellie referred to is the widow of William Cooper, deceased. Later, on February 6, defendant in error again wrote: "I want all this jangling stopped. The $113.18 due me can not be reduced. When that amount is sent me I will make out the deed."

Nothing further seems to have occurred of importance between the parties in respect to the 160 acres of land until in 1899, when defendant in error sold the land for $1600, conveyed the same to the purchaser and received the consideration therefor. Plaintiff in error testifies that he never authorized defendant in error to sell and convey this land, but in view of the correspondence and the previous dealings between these parties we agree with the trial and Appellate Courts that defendant in error was authorized to sell the land. Had he promptly reported the sale and turned the proceeds over to plaintiff in error, his sale of the land, being for all it was then worth, would be free from legal objections or just criticism, but for some reason not disclosed by the record, defendant in error did not report to plaintiff in error this sale but kept all knowledge of it from him for five years, during all of which time he had the use and benefit of the $1600 he had received for the land.

We do not think that the evidence warrants the conclusion that defendant in error intended to defraud his brother out of the $1600. Under the evidence we are disposed to regard his retention of the consideration as not inconsistent with an honest purpose and a desire to save the money for the benefit of plaintiff in error or his family. It is not at all unreasonable that defendant in error believed that if the money were paid to plaintiff in error it might soon disappear and but little or nothing be left to represent it. But even if it be assumed that defendant in error was not legally justified in retaining the consideration for the land because he thought it would be to the best interest of the owner of the fund and that his retention of it was a wrongful conversion, still his wrong in this regard would not relate back and make the sale itself illegal. The land was sold for all it was worth and there was no bad faith or want of authority in making the sale. The wrong, if any, was in a failure to report the sale to plaintiff in error and the retention of the proceeds. Under these circumstances we think the court below correctly found that defendant in error should be charged with the amount of money received for the land and interest thereon, and not for the value of the land after it had been sold.

Plaintiff in error cites and relies on numerous authorities which hold that where a trustee without right or authority sells and converts the trust property to his own use he may be required to account for the full value of the subject of the trust as it would have been had he carried out the terms of the trust upon which he held the property. These cases would control the case at bar if defendant in error had wrongfully and without authority sold the land and converted the proceeds to his own use, but since, as we have seen, the sale itself was not wrongful and without authority, the cases relied on by plaintiff in error are not applicable to the case at bar. Plaintiff in error's real ground for complaint is that the defendant in error has

wrongfully retained the proceeds of this sale and not that he wrongfully and illegally came into possession of them. Ordinarily, the true measure of damages for the retention of money is the value of the use of money, which is fixed by the statute. The cases are very rare where the mere non-payment of a money demand will warrant the allowance of anything more than legal interest as compensation to the party entitled to receive it. Our conclusion is that the Appellate Court properly disposed of this question.

The judgment of the Appellate Court reversing the decree of the circuit court and remanding the cause with directions is accordingly affirmed.          *Judgment affirmed.*